**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| YUK FUN JOANNE BEDFORD, individually and as Trustee of the YUK FUN JOANNE BEDFORD REVOCABLE TRUST, DAVID RICHARD MARK ALRIDGE, individually and as Trustee of the DAVID RICHARD MARK ALDRIDGE REVOCABLE TRUST and JAMES KONRAD DEREK DOWN individually and as Trustee of the JAMES KONRAD DEREK DOWN REVOCABLE TRUST | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Plaintiffs*, | § | CIVIL ACTION NO.  4:24-cv-84 |
| | § | |
| v. | §<br>§ | |
| | § | |
| FOO TIANG MENG  DIRK ROBERT, INDIVIDUALLY AND AS TRUSTEE OF THE HILLS OF WINDRIDGE TRUST | §<br>§<br>§ | |
| *Defendants*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT, PETITION TO REMOVE FOO TIANG MENG DIRK ROBERT AS THE TRUSTEE OF THE HILLS OF WINDRIDGE TRUST, AND APPLICATION FOR PRELIMINARY INJUNCTION**

> **"The trustee is accountable to a beneficiary for the trust property and for any profit made by the trustee through or arising out of the administration of the trust…"**
>
> **§114.001 TEX. PROP. CODE.**

1.      *Parties and Service.* Plaintiff, YUK FUN JOANNE BEDFORD, Individually and as Trustee of the YUK FUN JOANNE BEDFORD REVOCABLE TRUST, is a resident of the Hong Kong Special Administrative Region of the People's Republic of China whose principal residence is 5C Cambridge Garden, 20 Babington Path, Mid-Levels, Hong Kong.

2.      Plaintiff, DAVID RICHARD MARK ALRIDGE, Individually and as Trustee of the DAVID RICHARD MARK ALDRIDGE REVOCABLE TRUST, is a resident of the Hong Kong Special Administrative Region of the People's Republic of China whose principal residence is Unit 10B Tower 23, Parc Oasis, Yau Yat Chuen Kowloon, Hong Kong.

3.      Plaintiff, JAMES KONRAD DEREK DOWN Individually and as Trustee of the JAMES KONRAD DEREK DOWN REVOCABLE TRUST is a resident of the Hong Kong Special Administrative Region of the People's Republic of China whose principal residence is 145 Ho Chung New Village, Sai Kung, Hong Kong.

4.      Defendant, FOO TIANG MENG DIRK ROBERT, Individually and as Trustee of the HILLS OF WINDRIDGE TRUST ("Dirk Foo"), is an individual whose last known mailing address is 7500 Lazy Spur Blvd, Fort Worth, Texas 76131.[1] He may be served at that address or wherever he may be found. Issuance of Summons for service of process is hereby requested.

5.      *Jurisdiction.* This district court has jurisdiction under 28 U.S.C. §1332(a) (1) and (2) because the amount in controversy exceeds $75,000, Plaintiffs are citizens of the Hong Kong Special Administrative Region of the People's Republic of China, and Dirk Foo's last known place of domicile is in Texas. *See* 28 U.S.C. §1332(a) (1) and (2). The citizenship of a traditional trust is determined by looking at the citizenship of the trustee. *GBForefront, L.P. v. Forefront Mgmt, Grp.,* 888 F.3d 29, 39 (3d Cir. 2018). This is because the trustee is the real party in interest and thus the trustee's citizenship should be considered. *Raymond Loubier Irrevocable Trust v. Loubier, 858* F.3d 719, 730 (2d Cir. 2017). Furthermore, this Court has jurisdiction over the subject matter of this dispute pursuant to Section 115.001 of the Texas Property Code.

6.      *Venue.* Venue is proper in this district under 28 U.S.C. 1391(b) (2) because a substantial part of the events or omissions giving rise to the claim occurred in Tarrant County, Texas. Additionally, the real property that is subject of the action is situated in Tarrant County, Texas.

7.      *Facts.* David Richard Mark Aldridge, as Trustee of the David Richard Mark

---

[1] According to a Texas Franchise Tax Public Information Report for Pearl Developments, LLC dated February 28, 2023.

Aldridge Revocable Trust ("Aldridge"); Yuk Fun Joanne Bedford, as Trustee of the Yuk Fun Joanne Bedford Revocable Trust ("Bedford"); and James Down, as Trustee of the James Down Revocable Trust ("Down") are all Settlors and Beneficiaries of the Hills of Windridge Trust (Sales Trust) Revocable Trust ("the Trust"). A copy of their Unsworn Declarations are attached as "Exhibits 1 through 3." Aldridge, Bedford and Down are collectively referred to as "Settlors." When discussing the formation of the Trust and "Beneficiaries" when discussing the current status of the trust assets.

8.       The Settlors own certain undivided fractional interests ("UFIs") in certain real property located in Tarrant County, Texas ("the Property"). *Id*. The legal description of the Property can be found on pages 5 through 9 of the certified copies of the Settlors' Special Warranty Deeds, which are attached herewith as "Exhibit 4-A, 4-B and 4-C." At the time of purchase, each UFI was valued by seller of the UFIs, Windridge A2A Developments, LLC, as being worth $10,000.00 USD. In total, the Settlors purchased $350,000 worth of UFIs in the Property. *See* Exhibits 1, 2 and 3. The UFIs would be pooled together, with other investors, in order to develop a master planned community called "The Hills of Windridge" ("THOW"). The seller, Windridge A2A Developments, LLC, was in charge of facilitating the development of master planned community, at the direction of Dirk Foo. Hereinafter Windridge A2A Developments, LLC will be referred to as "the Facilitator."

9.       According to a report generated by A2A Capital Management Pte, Ltd. – the investment company in Hong Kong that marketed the UFIs to the Settlors – in May of 2013, THOW would cover 415 acres of land and would develop around 1,284 housing units. A copy of the May 2013 Report is attached as "Exhibit 5." Development of the lots would be done in phases. Approximately 102 – 121 lots will be prepared within each phase up to a maximum of 360 lots per

year. *Id*. A portion of the proceeds will be used to replenish the fund to develop the next phases. *Id*. Remaining portion will be set aside for profit distribution to all co-owners. *Id*. A financial report will be presented to the co-owners every end of the year. *Id*.

10.     To fund the development, $4,600 USD per UFI would be deposited into a Development Fund account. Certified copies of the Settlors' Restrictive Covenants regarding the Development Fund is attached as "Exhibit 6." The Development Fund was intended to pay for the cost of planning, developing, constructing, maintaining and managing the development of master planned community. *Id*. The Development Fund was also to be used by the Facilitator to employ contractors, pay for insurance, taxes, utilities and any fees related to defending the co-owners in any and all actions and proceedings related to the Property or the co-owners. *Id*. For its services, the Facilitator was to be paid $5,000.00 USD plus 20% of the Net Income per house sold to a third-party owner who is not a Co-Owner. *Id*.

11.     Once the construction of the homes was complete and the homes were ready to be sold, the Settlors were required to agree to the terms of the Hills of Windridge Trust (Sales Trust) Revocable Trust Agreement ("Trust Agreement"), and to convey their UFIs to Dirk Foo, as Trustee, *in trust*, by way of a Special Warranty Deed. *See Id. See also* Exhibits 1 – 3. The Special Warranty Deeds were signed at the time the UFIs were purchased but were held in escrow until the homes were ready to be sold. *See* Exhibit 4-A through 4-C; *see also* Exhibits 1 – 3.

12.     According to the Restrictive Covenants and the Trust Agreement, once the Property had been developed and was ready to be sold to third parties, the Special Warranty Deeds would be delivered to Dirk Foo and the UFIs would be conveyed to him, in trust. The purpose of the Trust was to receive and convey real property on behalf of the Settlors and to distribute the Net Income from the sale of the real estate to the Beneficiaries. A copy of the Hills of Windridge Trust (Sales

Trust) Revocable Trust ("Trust Agreement") is attached hereto as "Exhibits 1-C and 2-C." *See also* Exhibit 3. Once the conveyances were delivered, Dirk Foo would become the Trustee of the Trust ("the Trustee"). According to the terms of the Trust Agreement, the Trustee was obligated to hold the title to the Property, in trust, for and on behalf of the Settlors. *Id.*

13.    On or about April 8, 2014, a majority of the co-owners of the UFIs acknowledged and confirmed that "each and every term required for the sale of the UFIs according to the Restrictive Covenant signed by all Co-Owners has been met" and the Special Warranty Deeds could be delivered to Dirk Foo, as Trustee. A copy of the Resolution was marked as Exhibit A to the Business Record Affidavit of Jeffrey C. Tasker, which is enclosed herewith as "Exhibit 11."

14.    After the Resolution was entered, Bedford's conveyance of fifteen (15) UFIs to the Trustee was filed of record on June 25, 2014. *See* the Bedford Special Warranty Deed attached as "Exhibit 4-A." Down's conveyance of fifteen (15) UFIs to the Trustee was filed of record on July 1, 2014. *See* the Down Special Warranty Deed attached as "Exhibit 4-B." Aldridge's conveyance of five (5) UFIs was filed of record on July 7, 2015. *See* the Aldridge Special Warranty Deed attached as "Exhibit 4-C." Once the UFIs were conveyed to the Trustee, the Settlors became the Beneficiaries of the Trust as well as the beneficial owners of the UFIs. *See* Exhibits 1-C and 2-C. *See also* Exhibit 3.

15.    Upon information and belief, there are hundreds of other beneficiaries, as the UFIs purchased by the Settlors were just a fraction of 4,412 total UFIs being sold by Windridge A2A Developments, LLC for the purpose of developing the Property. *See* page 1 of Exhibit 1-C, and 2-C. Additionally, a review of the Tarrant County Real Property Records reveals at least 1,200 Special Warranty Deeds being issued by the Facilitator to UFI owners. Therefore, it is likely that there are 1,200 other UFI purchasers that conveyed their UFIs, in trust, to the Trustee. Therefore,

it is also likely that there are also 1,200 other beneficiaries to the Trust ("unknown beneficiaries").

16.    Once the UFIs were conveyed to Dirk Foo, as Trustee, the Trust Agreement tasked him with the following duties: (1) complete the sale of the property or portions thereof; (2) hold any and all Net Income in trust for the Beneficiaries; (3) make distributions of the Net Income to the Beneficiaries in proportion to each beneficiaries' interest in the Trust. *See* Exhibits 1-C and 2-C. *See also* Exhibit 3. However, upon information and belief, the Trustee has failed to sell the Property or make distributions of the Net Income to the Beneficiaries.

17.    The last time the Beneficiaries were provided an update on the development of the Hills of Windridge project from Dirk Foo was on April 18, 2018 ("the 2018 Update"). A copy of the 2018 Update is enclosed as "Exhibit 1-E." In the last Update, Dirk Foo, as Trustee made the following representations:

- As of January 13, 2018, 68 homes had been sold;

- To date, the Beneficiaries had received distributions for 60 of the sold homes in the amount of $475.98 in distributions per UFI owned;

- The Beneficiaries were entitled to a distribution for the remaining 8 sold homes in the amount of $63.46 per UFI owned;

- An additional 30 homes, which were sold in 2017, would close in 2018;

- Phases 2, 3 and 4 and the servicing of 346 lots would commence "as soon as the fund for development is replenished."

18.    Assuming that each Beneficiary is entitled to around $7.90 per lot sold (based on the distribution numbers provided by the Trustee in the 2018 Update), Bedford and Down – both of whom purchased 15 UFIs – should have received a total of $11,613 in distributions for the 98 lots allegedly sold by the end of 2017. Aldridge should have received $3,871.

19.    However, as of this filing, Bedford has only received two distributions: (1) on April 1, 2016 in the amount of $4,164.75; and (2) on April 21, 2017 in the amount of $2,974.80. *See*

Exhibit 1. As of this filing, Down has only received two distributions: (1) $2,974.80 in April of 2017; and (2) $951.90 in May of 2018. *See* Exhibit 2. As of this filing, Aldridge can only confirm receipt of one distribution in the amount of $317.30, which was received on August 30, 3018. *See* Exhibit 3. Clearly, the Beneficiaries have not received distributions for all 98 homes the Trustee claimed to have sold by the end of 2017.

20.     What's more, according to the Tarrant County Real Property Records, as of May 6, 2021, 113 warranty deeds that have been executed by Dirk Foo, as Trustee, have been filed. A copy of the website for the Tarrant County Real Property Records that lists a summary of Deeds issued by Dirk Foo, as Trustee, is attached as "Exhibit 7." Assuming all of the warranty deeds were properly filed with the county, to date, it appears that, at least, 113 homes/lots have been sold to third parties. Based on the calculations outlined above, Bedford and Down should have received at least, $14,338.50 by now. Aldridge should have received at least, $4,779.50. Clearly, the Trustee has been withholding distributions of Net Income to the Beneficiaries.

21.     Furthermore, only **one** out of **ten** phases of The Hills of Windridge appears to have been developed. Therefore, a vast majority of the Property remains vacant, un-developed land ("Unsold Land"). As outlined in the May 2013 Report, THOW was targeted to have 1,284 total housing units. *See* Exhibit 5. As evidenced by the Real Property Record filings, the Trustee has not sold the vast majority of those housing units. Had those homes been built, based on the above calculations and not considering market fluctuations, Bedford and Down would have each received an estimated $152,154.00 in distributions. Aldridge would have received $50,718.

22.     Of course, since the Unsold Land was never developed, it is not as valuable. According to the Tarrant County Appraisal District, in 2021, the Unsold Land was appraised for $3,626,950.

23.     A review of the lawsuits pending and judgments against Dirk Foo, as Trustee, makes it clear that he has been mismanaging the trust assets. Dirk Foo, as Trustee of numerous Trusts, has been engulfed in litigation concerning his role as trustee.

24.     The last communication any of the Settlors received from Dirk Foo was in correspondence dated January 4, 2019. A copy of the January 4, 2019 correspondence is attached as Exhibit 1-F. The correspondence did not contain a physical address and was not signed by Dirk Foo, as Trustee. *Id*. Furthermore, the correspondence directed the Beneficiaries to email 'clientservices@a2aglobal.com' if they had any additional queries. Dirk Foo's name was not mentioned at all. *Id*.

25.     Dirk Foo has disappeared and has not provided the Beneficiaries with his contact information. Likewise, he continues to avoid his responsibilities as Trustee. Therefore, his breaches, as outlined herein, are ongoing.

26.     *Motion to Remove Dirk Foo, as Trustee*. A trust is a "fiduciary relationship with respect to property." TEX. PROP. CODE § 111.004(4). High fiduciary standards are imposed upon trustees. *Humane Soc'y of Austin & Travis County v. Austin Nat'l Bank,* 531 S.W.2d 574, 577 (Tex.1975). Trustees must handle trust property solely for the beneficiaries' benefit. *See* TEX. PROP. CODE § 111.004(4). A fiduciary "occupies a position of peculiar confidence towards another." *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 512 (1942). Accordingly, a trustee's association with the trust is that of a relationship or a status. Because a trustee's fiduciary role is a status, courts acting within their explicit statutory discretion are authorized to terminate the trustee's relationship with the trust at any time. *See Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009). The Texas Property Code sets forth that a trustee may be removed on the petition of an interested person and after hearing, if:

(1)  the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust;

(2)  the trustee becomes incapacitated or insolvent;

(3)  the trustee fails to make an accounting that is required by law or by the terms of the trust; or

(4)  the court finds other cause for removal.

TEX. PROP. CODE § 113.082.

27.     A trustee will be removed if the trier of fact finds that the evidence shows the trustee has committed one of the enumerated acts or an act, not enumerated, that the trial court in its discretion deems a proper ground for removal. *Lee v. Lee,* 47 S.W.3d 767, 791–92 (Tex. App.-Houston [14th Dist.] 2001, pet. denied); *Barrientos v. Nava*, 94 S.W.3d 270, 284 (Tex. App.-Houston [14th Dist.] 2002, pet. denied). In the present case, the evidence shows that the Trustee has materially violated the terms of the Trust, has become insolvent, has failed to make an accounting that is required by law and has wholly failed to defend the Trust and the trust assets against any litigation matters currently pending, which has put the settlors and beneficiaries of the Trust at risk of losing their interests in the Property.

28.     *Breach of the Trust Agreement.* The construction of a trust instrument is a question of law for the court. *Lesikar v. Moon*, 237 S.W.3d 361, 366–67 (Tex. App. – Houston [14th Dist.] 2007, pet denied); *Wright v. Greenberg,* 2 S.W.3d 666, 671 (Tex. App – Houston [14th Dist.] 1999, pet. denied). The court interprets trust instruments as it does contracts. *Goldin v. Bartholow,* 166 F.3d 710, 715 (5th Cir.1999). The court's primary objective in construing a will or a trust is to determine the intent of the maker. *Hurley v. Moody Nat'l Bank of Galveston,* 98 S.W.3d 307, 310 (Tex. App. – Houston [1st Dist.] 2003, no pet.); *Myrick v. Moody,* 802 S.W.2d 735, 738 (Tex. App. – Houston [14th Dist.] 1990, writ denied). Common words should be given their plain meaning unless the context indicates the words were used in another sense. *Patrick v.*

*Patrick,* 182 S.W.3d 433, 436 (Tex. App. – Austin 2005, no pet.). The word "shall" as used in contracts is generally mandatory, operating to impose a duty. *Roberts v. Clark,* 188 S.W.3d 204, 210 (Tex. App. – Tyler 2002, pet. denied). It is "inconsistent with the concept of discretion." *Id.*

29.    According to the Trust Agreement, the Trustee ***shall***:

- hold title to the UFIs in trust for and on behalf of the Settlor;
- complete the sale of the property or portions thereof in accordance with the Restrictive Covenants and the instructions of the Facilitator;
- hold all Net Income in trust for the beneficiaries; and
- make distributions of the Net Income to the beneficiaries.

*See* Pages 1 and 3 of Exhibit 1-C and 2-C.

30.    As outlined above, the titles to the Settlors' UFIs were transferred, *in trust*, to the Trustee in 2014 and 2015. The transfers took place after 99.6% of the Co-Owners acknowledged and confirmed that each and every term required for the sale of the UFIs according to the Restrictive Covenant signed by all Co-Owners was met prior to April 8, 2014. *See* Exhibit 7. However, despite the sale being approved back in 2014, all of the Property has not been sold by the Trustee. In fact, it appears that only *one of the ten* phases has even been developed. Furthermore, it appears the Trust ran out of funding for the additional phases prior to April of 2018. *See* Exhibits 1-E, 5 and 8. Furthermore, according to the Tarrant County Real Property Records, from 2015 to present, only 112 warranty deeds have been granted by the Trust to third parties. *See* Exhibit 7. The rest of the acreage appears to still be owned by the Facilitator.

31.    What's more, the Beneficiaries have not received distributions of Net Income generated from the sale of all 121 homes that have sold by the Trust to third parties. *See* Exhibits 1, 2 and 3. Since the Trustee has refused to provide an accounting to the beneficiaries, it is impossible for them to know whether he has properly held all Net Income, or what has happened to the remaining income generated from those sales.  *See* Exhibit 9.

32.      Because the Trustee has violated the Trust Agreement, he should be found personally liable for such violations and be removed as Trustee.

33.      *The Trustee is insolvent.* Because the Trustee is not paying the debts of the Property as they become due, he should be deemed insolvent and should be removed. The Texas Property Code does not define the term "insolvent." That being said, when the Court is interpreting a Trust, common words should be given their plain meaning unless the context indicates the words were used in another sense. *Patrick v. Patrick,* 182 S.W.3d 433, 436 (Tex. App.-Austin 2005, no pet.).  The Texas Supreme Court has agreed that insolvency means "**a debtor's failure or refusal to pay his debts in the due course of business**." *Bandy v. First State Bank,* 835 S.W.2d 609, 621 (Tex.1992) (emphasis added). Therefore, "insolvency" means an inability to pay debts as they mature. *Parkway/Lamar Partners, L.P. v. Tom Thumb Stores, Inc.,* 877 S.W.2d 848, 850 (Tex. App – Fort Worth 1994, writ denied). The Texas Business and Commerce Code states that "a debtor who is generally not paying their debts as they become due is presumed to be insolvent." *See* TEX. BUS. & COMM. CODE §24.003(b). In this case, the evidence is clear that the Trustee has failed to pay its debts as they became due. This is evidenced by the fact that is are numerous lawsuits for non-payment of debts and misappropriation of funds. *See* Exhibits 8, 9, 10 and 12. Accordingly, the Trustee should be deemed insolvent and should be removed by the Court.

34.      Furthermore, Dirk Foo, as Trustee even admitted to the Beneficiaries that the development funds for The Hills of Windridge need to be replenished before additional phases can be developed. *See* Exhibit 1 – E.

35.      *There is Good Cause to Remove Dirk Foo, as Trustee.* The Texas Property Code provides that "a court may, in its discretion, remove a trustee ... if ... the court finds other cause for removal." *Kappus v. Kappus*, 284 S.W.3d 831, 838 (Tex. 2009). There is good cause to remove

Dirk Foo, as Trustee, as he has breached the trust and has wholly failed to communicate with the beneficiaries or protect the trust assets. A breach of trust occurs when a trustee breaches his statutory or common law fiduciary duty. *See* TEX. PROP. CODE §114.001(b). It is a well-established principle that a trustee is a fiduciary that is held to a high standard of care when dealing with trust property. *See generally* TEX. PROP. CODE §§ 113.051–115.059; *Estate of Boylan,* 2015 WL 598531, at 4 (Tex. App.–Fort Worth March 12, 2015, no pet.) (mem. op.). As a fiduciary, a trustee owes an unwavering duty of good faith, fair dealing, loyalty, and fidelity to his or her beneficiaries when managing the affairs of a trust and its corpus. *Id.* Moreover, a trustee owes a duty of full disclosure of all material facts known to him or her which might affect the rights of beneficiaries. *Trostle v. Trostle,* 77 S.W.3d 908, 914 (Tex. App. 2002 – Amarillo, no pet.) (citing *Huie v. DeSahzo,* 922 S.W.2d 920, 923–24 (Tex.1996)). This fiduciary duty requires that a trustee exercise care and judgment that a person of ordinary prudence, discretion and intelligence would exercise when managing his or her own affairs. *Boylan,* 2014 WL 598531, at 4. "A trustee can exercise his fiduciary duty in such a negligent manner that his lack of diligence will result in a breach of his fiduciary duty." *Jewett v. Capital Nat. Bank of Austin,* 618 S.W.2d 109, 112 (Tex.Civ.App.–Waco 1981, writ ref'd n.r.e.).

36.    A fiduciary has the duty to avoid self-dealing, bad faith, intentional adverse acts, and reckless indifference about the beneficiary and her best interest, and cannot be relieved of liability for such conduct, even in cases where a trust instrument includes exculpatory language. *See InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 888-89 (Tex. App.—Texarkana 1987, no writ) (citing RESTATEMENT (SECOND) OF TRUSTS § 222 (1959)). Moreover, a trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a

mistake. *Ertel v. O'Brien*, 852 S.W.2d 17, 21 (Tex. App.—Waco 1993, writ denied); *Brault v. Bigham*, 493 S.W.2d 576, 579 (Tex. Civ. App.—Waco 1973, writ ref'd n.r.e.). "[G]ood faith is no defense where the trustee has arbitrarily overstepped the bounds of his authority, or where he has not exercised diligence or has acted unreasonably, or has been guilty of such gross neglect as no reasonably intelligent person would consider proper." *Republic Nat'l Bank & Trust Co. v. Bruce*, 105 S.W.2d 882, 885 (Tex. 1937).

In this case, the Trustee has breached his fiduciary duties in several ways:

(1) Failing to pay debts owed on the Property;

(2) Refusing to account to the beneficiaries;

(3) Failing to answer and defend the Trust in the Lawsuits

(4) Failing to protect the trust assets; and

(5) Failing to disclose to the Settlors/Beneficiaries that the tax liens, mechanic's liens, and lawsuits had been filed.

An "absolute and positive duty is imposed upon" a trustee to defend the life of the trust whenever it is assailed, if the means of defense are known to him, or can with diligence be discovered. *Republic Nat. Bank & Tr. Co. v. Bruce*, 105 S.W.2d 882, 885 (Comm'n App. 1937) (quoting Cuthbert v. Chauvet, 32 N.E. 1088, 1091 (1893)) In this case, Dirk Foo, as Trustee has been served with various lawsuits and knows that the trust assets are at risk of being foreclosed on. He also knows, or should know, that the property taxes have not been paid. Therefore, he has breached his fiduciary duties by not defending the life of the trust assets and should be removed.

37.     *An Attorney Ad Litem Should be Appointed.* Pursuant to Section 115.011, only the beneficiaries of a trust that are designated by name, are necessary parties to a lawsuit. In the present case, the *other* beneficiaries of the Trust are not designated by name in the Trust Agreement. That

being said, given that the Court's decision to remove Dirk Foo, as Trustee, affects the unknown

beneficiaries, pursuant to Section 115.014 of the Texas Property Code, the Beneficiaries request

that this Court appoint one attorney ad litem to represent the unknown beneficiaries' interests. *See*

TEX. PROP. CODE § 115.014. However, the Beneficiaries request that the attorney ad litem's fees

be paid out of the trust assets once they are ascertained, and not by the Beneficiaries, individually.

38.    *A Receiver Should be Appointed.* Pursuant to Section 114.008 of the Texas

Property Code, the Beneficiaries ask that this Court appoint a Receiver to take possession of the

trust property, create an accounting for the Beneficiaries, and administer the trust until a new

trustee is appointed. Thereafter, the Receiver should be order to produce an accounting of the trust

property. *See* TEX. PROP. CODE § 114.008(4) and (5).

39.    *Application for Preliminary Injunction.* A court may exercise any power to grant

any writ, including a writ of injunction, necessary to administer justice between the parties,

preserve the subject matter of the litigation, and makes its judgment effective. See *Baucom v.*

*Texam Oil Corporation,* 423 S.W.2d 434, 422 (Tex. Civ. App - El Paso 1967, writ req'd n.r.e.). A

temporary injunction is proper in this case because there is a potential that the Beneficiaries will

lose the trust assets, which consists, in part, of real property, if Dirk Foo is not enjoined from acting

at the Trustee. In Texas, the potential loss of rights in real property is a probable, imminent, and

irreparable injury that qualifies a party for a temporary injunction. *See Franklin Savs. Ass'n v.*

*Reese,* 756 S.W.2d 14, 15-16 (Tex. App.—Austin 1988, no writ). To secure a temporary injunction

at common law, a party must plead and prove a probable right of recovery. *See Recon Exploration,*

*Inc. v. Hodges,* 798 S.W.2d 859, 861 (Tex. 1978). To establish a probable right of recovery, a party

need not prove conclusively that it will prevail on the merits; instead, it need only show that a bona

fide issue exists as to its right to ultimate relief. *Id. See also Camp v. Shannon,* 348 S.W.2d 517,

519 (Tex. 1961). The common law clothes the trial court with broad discretion in determining whether an applicant has met its burden. *See Recon Exploration*, at 851. In this case, there is a probable right of recovery on the petition to remove Dirk Foo as Trustee because he breached his fiduciary duties owed to the Beneficiaries.

40.    Beneficiaries also have the burden to show the Court that they would suffer an irreparable injury if injunctive relief was not granted. The test for determining whether an existing legal remedy is adequate is whether such remedy is as complete, practical, and efficient to the ends of justice and its prompt administration as is a remedy in equity. *Minexa Arizona, Inc. v. Staubach,* 667 S.W.2d 563, 567 (Tex. App. - Dallas 1984, no writ). Texas courts have previously recognized that a legal remedy may be considered inadequate when there is a danger that a defendant's funds will be reduced or diverted pending trial. *See Minexa,* 667 S.W.2d at 567. The "trial" in this case is to remove Dirk Foo as Trustee of the Hills of Windridge Trust. The Beneficiaries can show there is a danger that their trust funds/assets will be foreclosed on pending trial because they can show it is likely that several lawsuits exist against Dirk Foo, as Trustee, for which judgments and/or default judgments are pending. If the real property is foreclosed on, Beneficiaries will be irreparably harmed as their trust assets will no longer exist. Without an injunction, the Beneficiaries will have no adequate remedy at law.

41.    The injuries to the Beneficiaries, and all unascertained beneficiaries, if the real property is foreclosed on due to Dirk Foo not defending the Trust in various litigation proceedings would outweigh any injury the injunction might cause them, nor would issuance of the injunction disserve the public interest.

42.    Therefore, the Beneficiaries request that this Court issue a mandatory temporary injunction requiring that: (1) Dirk Foo, as Trustee of the Windridge Trust, immediately cease

acting as Trustee so that a Receiver or attorney ad litem can appear and defend the trust assets in the various litigation matters; (2) Dirk Foo and any attorney-in-fact for him, as Trustee, be temporarily enjoined from entering into any binding agreements and from selling, conveying, transferring, encumbering or otherwise disposing of any portion of the Property or any other trust assets.

43.    Beneficiaries ask the Court to set their application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against the defendants.

44.    *Attorney's Fees.* The Beneficiaries were forced to file this Petition to Remove Trustee because the Trustee materially violated the terms of the trust, failed to make an accounting required by law, and absconded from the country and is nowhere to be found. Therefore, pursuant to the Texas Property Code, the Court may award to Beneficiaries all costs and reasonable and necessary attorney's fees as may seem equitable and just. Tex. Prop. Code §114.064.

WHEREFORE, the Beneficiaries pray that the Court grant the relief requested herein as follows:

(1)    The Court set a date for a hearing on the application for temporary injunction;

(2)    Beneficiaries be ordered to publish notices of the hearing(s) on this Motion at least three times in a newspaper having general circulation in Tarrant County, as is authorized by Section 115.016(b) of the Texas Property Code;

(3)    An attorney ad litem be appointed to represent the interests of the unknown beneficiaries;

(4)    The Court appoint a Receiver to take possession of the trust property and administer the trust;

(5)    Once a Receiver is appointed, s/h be ordered to produce an accounting of the trust property within 30 days of being appointed;

(6)    Defendant be responsible for paying the reasonable and necessary fees and costs of the attorney ad litem and the Receiver;

(7)    after hearing the evidence in this proceeding, the court sign an order or orders

granting Beneficiaries' application for preliminary injunction and removing Dirk Foo, as Trustee, as the trustee of the Hills of Windridge Trust;

(8)     Dirk Foo be found liable to the Beneficiaries for breach of the Trust Agreement;

(9)     Because the Beneficiaries have pursued removal of Dirk Foo, as Trustee, on behalf of themselves and all of the unknown beneficiaries, that their reasonable and necessary attorney fees and court costs be recovered from the trust assets prior to any disbursements of Trust assets, if any, pursuant to Section 114.064 of the Texas Property Code; and

(10)    All pre- and post- judgment interest.

Respectfully submitted,

SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP

By: */s/ Marianne G. Robak*
      Marianne G. Robak
      State Bar No. 24048508
      mrobak@shackelford.law
      717 Texas Ave., 27th Floor
      Houston, Texas 77002
      (832) 669-6073 Telephone
      (832) 565-9030 Fax

ATTORNEY FOR PLAINTIFFS